## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**BYRON JOSEPH**                                    **CIVIL ACTION**

**VERSUS**                                          **NO.  08-3992**

**BURL CAIN, WARDEN**                               **SECTION "A"(4)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.   Factual and Procedural Background

The petitioner, Byron Joseph ("Joseph"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  Joseph was charged on April 23, 2003, by a Bill of Information in Jefferson Parish.[3]  He was charged with one count of Aggravated Flight from An

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 3, Bill of Information, 4/23/03.

Officer pursuant to La. Rev. Stat. Ann. §14:108.1(C), one count of Possession of 400 grams or more of Cocaine in violation of La. Rev. Stat. Ann. § 40:967.F, and one count of Simple Burglary in violation of La. Rev. Stat. Ann. § 14:62.[4]

According to the record, on June 7, 2002, Agent Shannon Jones of the Jefferson Parish Sheriff's Office narcotics division was driving a marked police car southbound on Lake Avenue in Metairie, Louisiana.[5]  In an oncoming lane, he saw a Chevrolet Monte Carlo, driven by Joseph, with illegally tinted windows and no vehicle inspection sticker.  Jones made a U-turn in order to follow behind the Monte Carlo.  He continued to follow the car into the parking lot of an apartment complex at 1601 Lake Avenue.  Jones turned on his siren and overhead lights to effect a traffic stop.

Joseph exited the car and walked toward an apartment in the complex.  Jones asked Joseph to return to his car, and he complied.  Jones then proceeded to explain to Joseph that he was stopping him for having illegal tinting on his car windows and no inspection sticker.

Jones asked Joseph for his drivers license, car registration, and proof of insurance, and Joseph cooperated.  He asked Joseph if there was anyone else in the car, because he could not see into the car through the dark tinted windows.  According to Jones, Joseph then tried to close the open driver's door and appeared to be nervous.  Jones became concerned that Joseph may have had a gun, so he asked for permission to look inside the car.  Joseph verbally consented to the search.

Jones found two Foot Locker shoe store shopping bags on the back seat, and each bag contained a shoe box.  The first box contained shoes.  When he opened the second box, he found

_____

[4]*Id.*

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State  v. Joseph*, 901 So. 2d 590, 593-594 (La. App. 5th Cir. 2005); St. Rec. Vol. 2 of 3, 5th Cir. Opinion, 04KA-1240, pp. 3-5, 4/26/05.

three "bricks," or packages of what appeared to be narcotics.  Jones withdrew from the car and prepared to take his gun out of his holster.  He instructed Joseph to walk toward him and Joseph instead fled on foot.

Jones notified headquarters that Joseph had fled and he took chase.  Joseph jumped over a fence, and Jones ended his pursuit.  Jones returned to the car to secure the evidence.  Two other officers were dispatched to the scene.  One of the officers conducted a field test on the substance, and it tested positive for cocaine.  As a result, the officer took possession of the cocaine and obtained a warrant for Joseph's arrest.

On June 4, 2003, the  Trial Court held a Preliminary Hearing and found probable cause as to count two and no probable cause as to counts one and three.[6]  The State also Amended the Bill of Information to add Joseph's alias, Travis Brissette.[7]

On August 26, 2003, Joseph was tried before a jury only as to count two, possession of 400 grams or more of cocaine.[8]  During the trial and out of the presence of the jury, the Trial Court held a hearing on Joseph's motion to suppress the evidence.[9]  The Trial Court denied the motion, and the trial proceeded.[10]  The jury found Joseph guilty as charged.[11]

---

[6]St. Rec. Vol. 1 of 3, Preliminary Hearing Minutes, 6/16/03.

[7]St. Rec. Vol. 1 of 3, Bill of Information, 4/23/03, handwritten amendments dated 8/26/03.  The record also uses the spelling "Brisette."

[8]St. Rec. Vol. 1 of 3, Trial Minutes, 8/26/03; Trial Transcript, 8/26/03.

[9]*State v. Joseph*, 901 So. 2d at 593; St. Rec. Vol. 2 of 3, 5th Cir. Opinion, 04KA-1240, pp. 2-3, 4/26/05; St. Rec. Vol. 1 of 3, Trial Transcript, pp. 45-59, 8/26/03.

[10]*Id.*; St. Rec. Vol. 1 of 3, Trial Transcript, pp. 59-60, 8/26/03.

[11]St. Rec. Vol. 1 of 3, Trial Minutes, 8/26/03; Jury Verdict, 8/26/03.

On August 28, 2003, the Trial Court sentenced Joseph to serve 30 years in prison at hard labor.[12]  The State also filed a multiple bill alleging that Joseph was a second felony offender to which Joseph entered a plea of not guilty.[13]

On October 29, 2003, the Trial Court held a hearing on the Multiple Bill and found Joseph to be a Second Offender.[14]   Thereafter, the Court vacated the original sentence and sentenced Joseph to serve 45 years in prison.[15]  The same day, the State entered a Nolle Prosequi as to counts one and three.[16]

On Direct Appeal, Joseph's counsel argued that the Trial Court erred in denying the Motion to Suppress based on consent and asked the court to conduct an errors patent review.[17]  Joseph also submitted a pro se brief raising three assignments of error: (1) the trial court erred in denying the Motion to Suppress because there was no reasonable basis for the initial stop; (2) the trial court erred in finding that Joseph consented to the search based on the totality of the circumstances; and (3) Joseph withdrew his consent to the search before the officer found the contraband in the vehicle.[18]

 On April 26, 2005, the Louisiana Fifth Circuit affirmed Joseph's conviction and sentence finding that the Trial Court did not err in denying the Motion to Suppress, because the traffic stop

---

[12]St. Rec. Vol. 2 of 3, Corrected Sentencing Minute Entry, 8/28/03; Sentencing Transcript, 8/28/03.

[13]*Id.*; St. Rec. Vol. 1 of 3, Multiple Bill, 8/28/03.

[14]St. Rec. Vol. 1 of  3, Multiple Bill Hearing Minutes, 10/29/03.

[15]*Id*.

[16]St. Rec. Vol. 1 of 3, Bill of Information, 4/23/03, handwritten notation dated 10/29/03.

[17]St. Rec. Vol. 1of 3, Appeal Brief, 04-KA-1240, 12/17/04.

[18]St. Rec. Vol. 1 of 3, Pro Se Supplemental Appeal Brief, 1/24/05.

and search were valid and Joseph consented to the search.[19]  On its errors patent review, the Court ordered the Trial Court to correct the date of the sentencing minutes.   The Court also recognized other errors patent, including: (1) the insufficient delay without waiver between conviction and sentence; (2) the notice of appeal was premature; (3) the Trial Court failed to advise Joseph of post-conviction delays; and (4) the Trial Court failed to impose the statutorily required restrictions on the Habitual Offender Sentence, and found that no corrective actions were required, except to order the Trial Court to notify Joseph of his post-conviction delays.[20]  Joseph filed an application for rehearing on  May 13, 2005, which the appellate court refused on May 27, 2005.[21]

On Monday, June 27, 2005, Joseph's counsel mailed a timely writ application which was filed with the Louisiana Supreme Court on June 28, 2005.[22]  Counsel raised only one claim for review arguing that the Trial Court erred in denying the Motion to Suppress.  Joseph filed pro se a supplemental brief raising four grounds for relief:[23] (1) the officer did not have reasonable suspicion to detain him beyond the traffic stop; (2) consent to the search of the car was not freely given; (3) consent was revoked before the search was conducted; and (4) he was charged with possession of cocaine in excess of 400 grams and was convicted of possession with intent to distribute over 28 grams of cocaine, which was not a responsive verdict.

---

[19]*State  v. Joseph*, 901 So. 2d at 593; St. Rec. Vol. 2 of 3, 5th Cir. Opinion, 04KA-1240, pp. 2-3, 4/26/05.

[20]*Id*., at 598.

[21]St. Rec. Vol. 1 of 3, Application for Rehearing, 04-KA-1240, 5/13/05; 5th Circuit Notice, 5/27/05.

[22]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 05-K-1700, 6/28/05 (postal metered 6/27/05); La. S. Ct. Letter, 05-K-1700, 6/28/05 (showing postal meter of 6/27/05).

[23]St. Rec. Vol. 3 of 3, Pro Se Supplemental Writ Application, 05-K-1700, 7/26/05 (dated 6/27/05).

The Louisiana Supreme Court denied the Writ Application without stated reasons on February 3, 2006.[24] Joseph's conviction became final 90 days later, on May 4, 2006, because he did not file a Writ Application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999)(period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U. S. S. Ct. Rule 13(1).

On June 24, 2006, Joseph submitted a motion to the Trial Court seeking copies of the district attorney's file pursuant to La. Code Crim. P. art. 822(B).[25] The Court denied the motion on September 27, 2006, advising Joseph that he should contact the district attorney's office directly.[26] The court reporter also provided an estimate of the costs to produce his transcripts in response to his request for that information.[27]

On April 26, 2007, Joseph submitted an Application for Post-conviction Relief to the Trial Court in which he raised five grounds for relief:[28] (1) insufficient evidence to prove the actual amount of cocaine seized; (2) petitioner was denied the right to be present at trial; (3) petitioner was denied the right to testify on his own behalf; (4) the State failed to timely disclose a scientific report; and (5) ineffective assistance of appellate counsel for failure to obtain the entire record of the trial proceedings, including voir dire, voir dire objections, and opening and closing arguments, which denied him complete appellate review.

---

[24]*State v. Joseph*, 922 So. 2d 1176, 2005-1700 (La. 2/3/06).

[25]St. Rec. Vol. 2 of 3, Motion for Production of Documents,6/26/06 (dated 6/24/06).

[26]St. Rec. Vol. 2 of 3, Trial Court Order, 9/27/06.

[27]St. Rec. Vol. 2 of 3, Motion for Cost of Transcripts, 7/16/06; Letter to Joseph, 9/20/06.

[28]St. Rec. Vol. 2 of 3, Uniform Application for Post-Conviction Relief, 5/10/07 (dated 4/26/07).

The Trial Court denied relief on May 23, 2007, finding that the first four claims were procedurally barred from review pursuant to La. Code Crim. P. art. 930.4 because they should have been raised on direct appeal and were not.[29]  As to the fifth claim, ineffective assistance of appellate counsel,  the Trial Court found that Joseph was not entitled to relief, because none of the claims raised on appeal or in the application for post-conviction review required review of the voir dire or argument portions of the transcript.  The Trial Court also noted that, as to all claims raised, Joseph failed to meet his burden of proof.

On July 19, 2007, the Louisiana Fifth Circuit denied Joseph's related and timely[30] writ application, finding that the application did not disclose any error in the trial court's ruling.[31]

On September 17, 2007, Joseph submitted a writ application to the Louisiana Supreme Court seeking review of his post-conviction claims.[32]  The Court denied the application on June 20, 2008, without stated reasons.[33]

In the meantime, on June 13, 2008, Joseph filed a Motion to Correct an Illegal Sentence, in which he argued that his sentence after his conviction for possession of cocaine in excess of 400 grams was improper, because the weight of the drugs, on which the sentence was based, was not

---

[29]St. Rec. Vol. 2 of 3, Trial Court Order, 5/23/07.

[30]The Trial Court granted Joseph until July 9, 2007, to file an application with the appellate court.  St. Rec. Vol. 2 of 3, Notice of Intent, 6/6/07 (dated 6/4/07); Trial Court Order, 6/11/07.

[31]St. Rec. Vol. 2 of 3, 5th Cir. Order, 07-KH-464, 7/19/07.

[32]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 07-KH-1938, 10/3/07 (postal meter 9/18/07, dated 9/17/07).

[33]*State ex rel. Joseph v. State*, 983 So.2d 1268 (La. 2008); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2007-KH-1938, 6/20/08.

properly calculated.[34]   The Trial Court denied the motion on June 24, 2008, finding that any argument regarding sufficiency of the evidence should have been raised on appeal as a challenge to the conviction and was not properly raised in a motion to correct.[35]   After construing the petition as one seeking post-conviction relief from the conviction and sentence, the Court found that it was procedurally barred as untimely pursuant to La. Code Crim. P. art. 930.8(A).[36]

On July 23, 2008, Joseph filed a Notice of Intent to Seek Supervisory Review in the appellate court.[37]   The Trial Court granted Joseph until September 26, 2008, to file his writ application with the Louisiana Fifth Circuit.[38]

On August 11, 2008, the Louisiana Fifth Circuit denied Joseph's writ application, which actually had been filed on July 22, 2008,[39] finding no error in the Trial Court's ruling, including its construction of the motion as an untimely application for post-conviction relief barred from review under La. Code Crim. P. art. 930.8.[40]   Joseph did not seek further review of this ruling.

---

[34]St. Rec. Vol. 2 of 3, Motion to Correct Illegal Sentence, 6/13/08 (dated 6/6/08).

[35]St. Rec. Vol. 2 of 3, Trial Court Order, 6/24/08.

[36]*Id.*

[37]St. Rec. Vol. 2 of 3, Notice of Intent, 7/23/08.

[38]St. Rec. Vol. 2 of 3, Trial Court Order, 7/30/08.

[39]The filing date appears on the face of the Court's order denying the writ application on August 11, 2008.

[40]St. Rec. Vol. 2 of 3, 5th Cir. Order, 08-KH-606, 8/11/08.

## II.   <u>Federal Petition</u>

On July 22, 2008, the clerk of this Court filed Joseph's federal petition in which he raises

seven grounds for relief:[41] (1) insufficient evidence to prove the actual amount of cocaine seized;

(2) petitioner was denied the right to be present at trial; (3) petitioner was denied the right to testify

on his own behalf; (4) the State failed to timely disclose a scientific report in violation of *Brady v.*

*Maryland*, 373 U.S. 83 (1963); (5) ineffective assistance of appellate counsel for failure to obtain

the entire record of the trial proceedings, including voir dire, voir dire objections, and opening and

closing arguments, which denied him complete appellate review; (6) the Trial Court erred in denying

the Motion to Suppress the Evidence because there was no reasonable basis to detain petitioner

beyond the initial traffic stop; and (7) the Trial Court erred in finding consent to the search from the

totality of the circumstances.

The State filed a response in opposition to Joseph's petition  arguing that the petition was

not timely filed.[42]  Joseph filed a reply to the State's response arguing that he should be granted

some equitable tolling for the filing of the late 2007 Louisiana Supreme Court writ application

because the Louisiana Fifth Circuit did not timely notify him of their ruling.[43]  He provided a copy

of an envelope from the Louisiana Fifth Circuit bearing a postal meter date of August 28, 2007.  A

copy of this envelope is also in the state court record attached to his 2007 Louisiana Supreme Court

writ application.[44]

---

[41]Rec. Doc. No. 1.

[42]Rec. Doc. No. 8.

[43]Rec. Doc. No. 9.

[44]St. Rec. Vol. 3 of 3, 5th Cir. Envelope, 8/28/07.

The Court later granted Joseph leave to file additional arguments through his pleading entitled "Timeliness and/or Corruption," in which he appears to challenge the State's calculation of the finality of his conviction.[45]  The Court also granted Joseph leave to file additional documentation to counter the State's limitations defense.[46]  In that set of documents, Joseph provided a copy of his incoming mail log from the prison, which shows that, between January 1, and September 1, 2007, he received only one letter from the Louisiana Fifth Circuit on August 29, 2007.[47]

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[48] applies to this petition, which is deemed filed in this Court no later than July 3, 2008.[49]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in

---

[45]Rec. Doc. Nos. 10, 11, 12.

[46]Rec. Doc. Nos. 13, 14.

[47]Rec. Doc. No. 13, p. 4.

[48]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[49]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Joseph's federal habeas petition on July 22, 2008, when the filing fee was paid.  Joseph signed the petition on July 3, 2008, in spite of the fact that some portion of his petition was tendered for filing by the clerk of court on June 27, 2008.  Because the Court finds that his federal petition is timely, there is no need to resolve which date, is the earliest date on which he could have delivered the packet of papers to prison officials for mailing.  The fact that he later paid the filing fee also would not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

"procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State in this case argues that Joseph's federal petition was not timely filed.  However, considering the state filing rules and applicable mailbox rules,  the Court finds that Joseph's federal petition is timely filed.[50]  The Court will proceed to the substance of Joseph's claims, four of which are in procedural default, two are inappropriate for federal review, and one is without merit.

## IV.    Procedural Default (Claim Nos. 1, 2, 3, and 4)

The first four of Joseph's claims, insufficient evidence, denial of the right to be present at trial, denial of the right to testify, and violation of *Brady*, were first raised to the Trial Court in Joseph's application for post-conviction relief.  The Trial Court found that each of the claims did not involve new evidence and could have been, but were not, raised on appeal.  The Court denied relief pursuant La. Code Crim. P. art.  930.4.  Specifically, under Art. 930.4(C), "[i]f the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief."  This was the last reasoned decision of the state courts on this issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

In its opposition response, the State only discussed its argument regarding the timeliness of the petition.  The State did not address the procedural default or the merits of the claims, although it reserved its right to do so should the court require it.  The United States Fifth Circuit Court of

---

[50]First, the Court notes that the State did not consider or apply the state procedural rules or the mailbox rule to Joseph's state pleadings, including his 2007 Louisiana Supreme Court writ application, which is the focus of the limitations defense.  Also, according to La. S. Ct. Rule X § 5, Joseph had 30 days from the <u>mailing</u> of the notice of Louisiana Fifth Circuit's judgment to file with the Louisiana Supreme Court.  The State has offered nothing to refute Joseph's clear evidence that the Louisiana Fifth Circuit clerk of court did not postmark the Court's July 19, 2007, ruling to him until August 28, 2007.  He had 30 days from that date to file a writ application with the Louisiana Supreme Court. His Writ No. 07-KH-1938, was dated by him on September 17, 2007, and postmarked September 19, 2007.  Both of these dates were within the proper time period under Louisiana law.

Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim. *Nobles*, 127 F.3d at 420. This Court has discretion to raise procedural default *sua sponte*, provided that the petitioner has notice that the issue is being considered. *Fisher v. State*, 169 F.3d 295, 301 (5th Cir. 1999); *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998). Furthermore, the record reflects that the State's failure to raise this defense was the result of its decision to limit its response to the petition and there is nothing to indicate that it was an intentional waiver of the defense should the Court go beyond the time-bar argument. *See Prieto v. Quaterman*, 456 F.3d 511 (5th Cir. 2006) (*citing Magouirk*, 144 F.3d at 360).

The Court also notes that Joseph presents specific arguments in the memorandum in support of his petition regarding the procedural bar under Art. 930.4 relied on by the state trial court.[51] As will be discussed later in this opinion, Joseph suggests that the bar was "plain[ly] erroneous" and a "clear misinterpretation of the . . . intent in La. C. Cr. P. art. 930.4."[52] Joseph was therefore on notice prior to this Report that the bar had been imposed, and he has taken the opportunity to defend against the imposition of, or honoring, of the bar by this federal court.

Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this court is *sua sponte* raising the issue of procedural default and that the petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.** *Magouirk*, 144 F.3d at 350, 360. The Court therefore will address the procedural bar *sua sponte*.

---

[51]Rec. Doc. No. 1, p. 17.

[52]*Id.*

12

The denial of relief as to Joseph's first four claims was based on state procedural grounds, that is his procedural default under the procedural rules relied on by the state courts. Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).

The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

Thus, for the foregoing state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902.

A.        **Independent State Grounds**

In this case, the state trial court denied relief on Joseph's claims based solely on La. Code Crim. P. art. 930.4 for his failure to raise the claims on direct appeal.  This was clearly reliance on a state procedural rule independent of federal law.

The Court recognizes that the Trial Court also commented that Joseph had also failed to meet his burden of proof on the merits of all of the claims raised in that Application for Post-Conviction Relief.  However, it is well settled that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).  The Court therefore proceeds here on the procedural bar imposed by the Trial Court.  The reasons for the state courts' dismissal of these four claims were independent of federal law and instead relied strictly on state procedural requirements.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

B.        **Adequate State Grounds**

The question of the adequacy of a state procedural bar is itself a federal question.  *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993).  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339).  A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief.  *Id.*

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law.  *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-

14

68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp.2d 655, 674 (S.D. Tex. 1999). Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).

In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094 at *4 n. 2 (N.D. Ill. July 18, 2002). For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. *Davis v. Johnson*, No. 00CV684-Y, 2001 WL 611164 at *4 n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, No. 99-0005, 1999 WL 562728 at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied). However, where such a basis exists in state law, as it does in this case, the bar must stand.

As noted above, the state trial court denied these four post-conviction claims pursuant to La. Code Crim. P. arts. 930.4(C). The record supports the imposition of the procedural bar under Art.

930.4(C) since neither Joseph nor his appellate counsel raised these claims on direct appeal.  The record reflects that Joseph filed pro se a supplemental appeal brief and did not raise these claims.

Joseph argues in his petition that the Art. 930.4(C) bar should not be deemed adequate to bar his claims since he has a right to raise constitutional claims in a post-conviction application.[53]  While this may be true, through Art. 930.4(C), Louisiana prohibits such claims as here when they should have been raised on direct appeal.  Joseph also argues, under a broad reading, that the bar should not prevent review of his claims because his claims have merit.[54]  This is not sufficient to overcome the imposition of the bar or to establish that it is not adequate to prevent federal review.

The federal courts have held that the bar imposed under Art. 930.4(C) is adequate to foreclose federal review of a claim barred thereunder by the state courts.  *Simmons v. Cain*, No. 06-2130, 2008 WL 2185422, at \*6 (E.D. La. May 20, 2008) (Berrigan, J.); *Monroe v. Cain*, No. 05-0929, 2006 WL 5507856, at \*8 (E.D. La. Oct. 17, 2006) (Report and Recommendation), *adopted as modified on other grounds*, *Monroe v. Cain*, No. 05-0929, 2008 WL 818968, at \*1 (E.D. La. Mar. 24, 2008) (Berrigan, J.).

For the foregoing reasons, the bar imposed upon Joseph's claims of insufficient evidence, denial of the right to be present at trial, denial of the right to testify, and violation of *Brady*, are supported by the record and adequate to foreclose review by this federal court.

### C.      Cause and Prejudice

To establish a cause for his procedural default, Joseph must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."

---

[53]Rec. Doc. No. 1, p. 17-18.

[54]*Id.*

*Murray v. Carrier*, 477 U.S. 478, 488 (1986).  He has not demonstrated in his pleadings the existence of any objective factor external to the defense that impeded his, or his counsel's, ability to raise these claims in a procedurally proper manner in the state courts.

There is no obvious cause in the record for the failure to timely or properly challenge his conviction through these four claims.  The law is settled that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default."  *Murray*, 477 U.S. at 486.  Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed and the petitioner has not alleged any actual prejudice.  *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

### D.    <u>Fundamental Miscarriage of Justice</u>

Alternatively, a petitioner seeking federal habeas review can escape a procedural bar upon a showing that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice.  To establish this, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.   "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt."  *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

Joseph has not pointed to any new or existing evidence which would create a reasonable doubt as to his guilt or which would establish his actual innocence. *Murray*, 477 U.S. at 496. Furthermore, the arguments now raised in support of this federal habeas corpus petition were before the state courts and offer no basis for reasonable doubt on habeas corpus review. When the petitioner has not factually established his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Because Joseph has not met this alternative exception to the procedural bar, his procedurally defaulted claims, insufficient evidence (Claim 1), denial of the right to be present at trial (Claim 2), denial of the right to testify (Claim 3), and violation of *Brady* (Claim 4), must be dismissed with prejudice without review of the merits. The Court, however, will proceed to review the remaining claims.

## V.   <u>Standards of a Merits Review of the Remaining Claims</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

18

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (brackets in original) *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

19

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).   The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting  *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.   Analysis

### A.   Ineffective Assistance of Counsel (Claim No. 5)

Joseph alleges that his appellate counsel gave ineffective assistance because he failed to secure transcripts of the voir dire and opening and closing arguments for the appellate court's review.  He raised this claim in his application for post-conviction relief, which was denied by the Trial Court.  The Court held that Joseph had not raised any claims on direct appeal or in his post-conviction application which required review of the voir dire or argument portion of the transcript. The Court resolved that counsel was not ineffective for failing to order portions of the transcript that were not necessary for full judicial review.  This was the last reasoned decision of the state courts on this issue.  *Ylst*, 501 U.S. at 797.

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. at 668, relied upon by the Trial Court.  In

*Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. To meet the burden of proving ineffective assistance of counsel, the petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan*, 980 F.2d at 296; *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). The analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all of the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not

merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994). In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Motley*, 18 F.3d at 1226 (quoting *Strickland*, 466 U.S. at 693). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000).

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson*, 751 F.2d at 1441.

Joseph does not demonstrate, and the record does not reflect, that any objections were made during the voir dire or opening and closing arguments, which are the missing portions of the trial transcript that Joseph addresses. Under La. Code Crim. P. art. 841, "[a]n irregularity or error cannot

be availed of after verdict unless it was objected to at the time of occurrence." Without a claim being properly preserved for review on direct appeal, appellate counsel was not in a position to raise the claim on appeal. Thus, no error existed in counsel's failure to seek out those missing parts of the transcript from which he could urge no error. *Weston v. Ieyoub*, 69 F.3d 73, 76 (5th Cir.1995); *Schwander v. Blackburn*, 750 F.2d 494, 502 (5th Cir. 1985); *see also*, *Penson v. Ohio*, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); *Medellin v. Dretke*, 371 F.3d 270, 279 (5th Cir. 2004) (where overall claim without merit, ineffective assistance of counsel claim based on failure to raise issue likewise without merit); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (failure to raise meritless objection not ineffective  assistance of counsel); *Williams v. Collins*, 16 F.3d 626, 634-35 (5th Cir.1994) (where issue is without merit, failure to raise the issue on appeal cannot satisfy prejudice prong of *Strickland*). In addition, because the portions could not be relevant to the appeal, no prejudice resulted from counsel's use of an incomplete transcript to prepare the appeal. *Weston*, 69 F.3d at 76; *Schwander*, 750 F.2d at 502.

Furthermore, "the failure of counsel to press [an] argument on appeal 'does not warrant setting aside the judgment of a criminal proceeding' [since] the error has no effect on the judgment.'" *Schwander*, 750 F.2d at 502 (quoting *Strickland*, 466 U.S. at 692). Without a showing of prejudice resulting from the failure to pursue the missing portions of the transcript for error, any alleged deficiency in counsel's performance need not be considered. *Strickland*, 466 U.S. at 697-98; *Larsen v. Maggio*, 736 F.2d 215, 217-18 (5th Cir.1984). Joseph has no constitutional right to a full and complete transcript simply to "conduct 'fishing expeditions' to seek out possible errors at trial."

*Kunkle v. Dretke*, 352 F.3d 980 (5th Cir.1983) (quoting *Jackson v. Estelle*, 672 F.2d 505, 506 (5th Cir.1982)).

Joseph has not shown any error which should have been raised from the missing portions, and he has not demonstrated any prejudice, or effect on the outcome of the proceeding, as a result of counsel's failure to obtain the unnecessary portions of the transcript.  He therefore has not established that he was denied effective assistance of appellate counsel.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, *Strickland*.  Joseph is not entitled to relief on this claim.

### B.    Denial of the Motion to Suppress and the Finding that Consent to Search was Given (Claims Nos. 6 and 7)

In his next two claims, Joseph argues that the State Trial Court erred in denying his Motion to Suppress because the officer went beyond the scope of the initial traffic stop in conducting the search of his car.  He also contends that any consent he may have given was withdrawn, and the totality of the circumstances demonstrate that he did not acquiesce to the search.

The Trial Court held a full hearing on Joseph's Pretrial Motion to Suppress and denied the motion after finding no basis to suppress the evidence.[55]  The claims were also addressed and resolved against Joseph by the Louisiana Fifth Circuit on Direct Appeal.  The Louisiana Supreme Court denied the subsequent writ application without reasons thereby acquiescing to the appellate court's reasoned decision.  *Ylst*, 501 U.S. at 802.

In this case, the state courts considered the issues of whether Agent Jones had reason to conduct the search and whether he had consented to search the car.  After hearing the testimony and argument of counsel, the Trial Court resolved that the stop and search were done in a constitutional

---

[55]*Id.*; St. Rec. Vol. 1 of 3, Trial Transcript, pp. 59-60, 8/26/03.

manner and with the consent of Joseph. The Louisiana Fifth Circuit also determined on appeal that Agent Jones's search did not exceed the scope of the consent, which was freely given, and that he had cause to detain Joseph after the initial traffic stop.  The Louisiana Courts therefore resolved both issues in favor of the State.

In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Id.*, 428 U.S. at 494.  A "full and fair hearing means that 'where there are <u>facts</u> in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.'"  (emphasis in original) *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).  Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded.  *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987).

Thus, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," petitioner's claim cannot succeed. *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980); *Christian v. McKaskle*, 731 F.2d 1196, 1199 (5th Cir. 1984).  The bar of *Stone v. Powell* applies despite any state trial court error in deciding the merits of petitioner's Fourth Amendment claim.  *Andrews v. Collins*, 21 F.3d 612, 631-32 (5th Cir.

1994); *Christian*, 731 F.2d at 1199 n.1; *Swicegood v. Alabama*, 577 F.2d 1322, 1324-25 (5th Cir. 1978).

Joseph does not argue that he was denied a full and fair hearing on the motion to suppress or on the Fourth Amendment claims raised before this Court.  The record shows that Joseph and his counsel presented the arguments in support of his motion to the Trial Court, which conducted a full hearing.  He then presented the claims to the Louisiana Fifth Circuit on Direct Appeal, which considered the claims in a full published opinion.  The claims were then brought to the Louisiana Supreme Court, which denied relief.  After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims."  *Andrews*, 21 F.3d at 631.

The state courts provided Joseph, who was assisted by counsel, with the opportunity to litigate his Fourth Amendment claims fully and fairly.  The fact that he may disagree with the state courts' decision to deny relief is not sufficient to overcome the *Stone v. Powell* bar to federal review. *Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002).

Accordingly, *Stone v. Powell* bars review of Joseph's Fourth Amendment claims.  *Id.*; *Williams v. Collins*, 16 F.3d 626, 637-38 (5th Cir. 1994).  Joseph's claims challenging the denial of the Motion to Suppress and the finding of consent must be dismissed with prejudice.

**VII.   Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Byron Joseph's petition for issuance of a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[56]

New Orleans, Louisiana, this 21st day of January, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[56]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.