UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BYRON JOSEPH**                                              **CIVIL ACTION**

**VERSUS**                                                    **NO. 08-3992**

**BURL CAIN, WARDEN**                                         **SECTION "A"(4)**

**SUPPLEMENTAL REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.   Procedural History of the Captioned Case**

On January 21, 2011, the undersigned issued a Report and Recommendation addressing Byron Joseph's federal habeas corpus petition. In that report, it was recommended that the State's limitations defense be rejected.[2] Recognizing that the State had reserved its right to raise procedural

---

[1] Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 15.

default if the limitations defense was rejected,[3] the undersigned recommended that four of the claims raised in Joseph's federal habeas corpus petition be dismissed as procedurally barred from federal review and that the remaining three claims be dismissed as meritless.

After considering Joseph's objections,[4] the District Judge issued an Order and Reasons finding that the State failed to raise and waived its procedural default defense, declined to address procedural default sua sponte, acknowledged Joseph's intent to abandon all claims except the insufficiency of the evidence, and referred the matter back to the undersigned to address the merits of the sole remaining claim.

This report is in response to the District Court's referral limited to the insufficiency of the evidence claim. The record does not contain a formal ruling on Joseph's request to abandon or voluntarily dismiss the remaining claims. Out of an abundance of caution, the undersigned will recommend that the remaining claims be dismissed at the petitioner's request.

## II. State Court Factual and Procedural Background

The petitioner, Byron Joseph ("Joseph"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[5] Joseph was charged on April 23, 2003, by a bill of information in Jefferson Parish with one count of aggravated flight from an officer pursuant to La. Rev. Stat. Ann. §14:108.1(C), one count of possession of 400 grams or more of cocaine in violation

---

[3] *Id.*, p. 11; Rec. Doc. No. 8, p. 16 n.14.

[4] Rec. Doc. No. 16.

[5] Rec. Doc. No. 1.

of La. Rev. Stat. Ann. § 40:967(F), and one count of simple burglary in violation of La. Rev. Stat. Ann. § 14:62.[6]

The record reflects that, on June 7, 2002, Agent Shannon Jones of the Jefferson Parish Sheriff's Office narcotics division was driving a marked police car southbound on Lake Avenue in Metairie, Louisiana.[7] In an oncoming lane, he saw a Chevrolet Monte Carlo, driven by Joseph, with illegally tinted windows and no vehicle inspection sticker. Jones made a U-turn in order to follow behind the Monte Carlo. He continued to follow the car into the parking lot of an apartment complex at 1601 Lake Avenue in Metairie. Jones turned on his siren and overhead lights to effect a traffic stop.

Joseph exited the car and walked toward an apartment in the complex. Jones asked Joseph to return to his car, and he complied. Jones then proceeded to explain to Joseph that he was stopping him for having illegal tinting on his car windows and no inspection sticker.

Jones asked Joseph for his drivers license, car registration, and proof of insurance, and Joseph cooperated. He asked Joseph if there was anyone else in the car, because he could not see into the car through the dark tinted windows. According to Jones, Joseph then tried to close the open driver's door and appeared to be nervous. Jones became concerned that Joseph may have had a gun, so he asked for permission to look inside the car. Joseph verbally consented to the search.

Jones found two Foot Locker shoe store shopping bags on the back seat, and each bag contained a shoe box. The first box contained shoes. When he opened the second box, he found

---

[6]St. Rec. Vol. 1 of 3, Bill of Information, 4/23/03.

[7]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Joseph*, 901 So. 2d 590, 593-594 (La. App. 5th Cir. 2005); St. Rec. Vol. 2 of 3, 5th Cir. Opinion, 04KA-1240, pp. 3-5, 4/26/05.

three "bricks," or packages of what appeared to be narcotics. Jones withdrew from the car and prepared to take his gun out of his holster. He instructed Joseph to walk toward him and Joseph instead fled on foot.

Jones notified headquarters that Joseph had fled and he took chase. Joseph jumped over a fence, and Jones ended his pursuit. Jones returned to the car to secure the evidence. Two other officers were dispatched to the scene. One of the officers conducted a field test on the substance, and it tested positive for cocaine. As a result, the officer took possession of the cocaine and obtained a warrant for Joseph's arrest.

On June 4, 2003, the Trial Court held a preliminary hearing and found probable cause as to count two and no probable cause as to counts one and three.[8] The State also amended the bill of information to add Joseph's alias, Travis Brissette.[9]

On August 26, 2003, Joseph was tried before a jury only as to count two, possession of 400 grams or more of cocaine.[10] During the trial and out of the presence of the jury, the Trial Court held a hearing on Joseph's motion to suppress the evidence.[11] The Trial Court denied the motion, and the trial proceeded.[12] The jury found Joseph guilty as charged.[13]

---

[8] St. Rec. Vol. 1 of 3, Preliminary Hearing Minutes, 6/16/03.

[9] St. Rec. Vol. 1 of 3, Bill of Information, 4/23/03, handwritten amendments dated 8/26/03. The record also uses the spelling "Brisette."

[10] St. Rec. Vol. 1 of 3, Trial Minutes, 8/26/03; Trial Transcript, 8/26/03.

[11] *State v. Joseph*, 901 So. 2d at 593; St. Rec. Vol. 2 of 3, 5th Cir. Opinion, 04KA-1240, pp. 2-3, 4/26/05; St. Rec. Vol. 1 of 3, Trial Transcript, pp. 45-59, 8/26/03.

[12] *Id.*; St. Rec. Vol. 1 of 3, Trial Transcript, pp. 59-60, 8/26/03.

[13] St. Rec. Vol. 1 of 3, Trial Minutes, 8/26/03; Jury Verdict, 8/26/03.

On August 28, 2003, the Trial Court sentenced Joseph to serve 30 years in prison at hard labor.[14] The State also filed a multiple bill alleging that Joseph was a second felony offender to which Joseph entered a plea of not guilty.[15]

On October 29, 2003, the Trial Court held a hearing on the multiple bill and found Joseph to be a second felony offender.[16] Thereafter, the Court vacated the original sentence and sentenced Joseph to serve 45 years in prison.[17] The same day, the State entered a nolle prosequi as to counts one and three.[18]

On direct appeal, Joseph's counsel argued that the Trial Court erred in denying the motion to suppress based on consent and asked the court to conduct an errors patent review.[19] Joseph also submitted a pro se brief raising three assignments of error: (1) the trial court erred in denying the motion to suppress because there was no reasonable basis for the initial stop; (2) the trial court erred in finding that Joseph consented to the search based on the totality of the circumstances; and (3) Joseph withdrew his consent to the search before the officer found the contraband in the vehicle.[20]

On April 26, 2005, the Louisiana Fifth Circuit affirmed Joseph's conviction and sentence finding that the Trial Court did not err in denying the motion to suppress because the traffic stop and

---

[14]St. Rec. Vol. 2 of 3, Corrected Sentencing Minute Entry, 8/28/03; Sentencing Transcript, 8/28/03.

[15]*Id.*; St. Rec. Vol. 1 of 3, Multiple Bill, 8/28/03.

[16]St. Rec. Vol. 1 of 3, Multiple Bill Hearing Minutes, 10/29/03.

[17]*Id.*

[18]St. Rec. Vol. 1 of 3, Bill of Information, 4/23/03, handwritten notation dated 10/29/03.

[19]St. Rec. Vol. 1of 3, Appeal Brief, 04-KA-1240, 12/17/04.

[20]St. Rec. Vol. 1 of 3, Pro Se Supplemental Appeal Brief, 1/24/05.

search were valid and Joseph consented to the search.[21] On its errors patent review, the Court ordered the Trial Court to correct the date of the sentencing minutes. The Court also recognized other errors patent, including: (1) the insufficient delay without waiver between conviction and sentence; (2) the notice of appeal was premature; (3) the Trial Court failed to advise Joseph of post-conviction delays; and (4) the Trial Court failed to impose the statutorily required restrictions on the habitual offender sentence, and found that no corrective actions were required, except to order the Trial Court to notify Joseph of his post-conviction delays.[22] Joseph filed an application for rehearing on May 13, 2005, which the appellate court refused on May 27, 2005.[23]

On Monday, June 27, 2005, Joseph's counsel mailed a timely writ application which was filed with the Louisiana Supreme Court on June 28, 2005.[24] Counsel raised only one claim for review arguing that the Trial Court erred in denying the motion to suppress. Joseph filed pro se a supplemental brief raising four grounds for relief:[25] (1) the officer did not have reasonable suspicion to detain him beyond the traffic stop; (2) consent to the search of the car was not freely given; (3) consent was revoked before the search was conducted; and (4) he was charged with possession of cocaine in excess of 400 grams and was convicted of possession with intent to distribute over 28 grams of cocaine, which was not a responsive verdict.

---

[21]*State v. Joseph*, 901 So. 2d at 593; St. Rec. Vol. 2 of 3, 5th Cir. Opinion, 04KA-1240, pp. 2-3, 4/26/05.

[22]*Id.*, at 598.

[23]St. Rec. Vol. 1 of 3, Application for Rehearing, 04-KA-1240, 5/13/05; 5th Circuit Notice, 5/27/05.

[24]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 05-K-1700, 6/28/05 (postal metered 6/27/05); La. S. Ct. Letter, 05-K-1700, 6/28/05 (showing postal meter of 6/27/05).

[25]St. Rec. Vol. 3 of 3, Pro Se Supplemental Writ Application, 05-K-1700, 7/26/05 (dated 6/27/05).

The Louisiana Supreme Court denied the writ application without stated reasons on February 3, 2006.[26] Joseph's conviction became final 90 days later, on May 4, 2006, because he did not file an application for writ of certiorari with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999)(period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On June 24, 2006, Joseph submitted a motion to the Trial Court seeking copies of the district attorney's file pursuant to La. Code Crim. P. art. 822(B).[27] The Court denied the motion on September 27, 2006, advising Joseph that he should contact the district attorney's office directly.[28] The court reporter also provided an estimate of the costs to produce his transcripts in response to his request for that information.[29]

On April 26, 2007, Joseph submitted an application for post-conviction relief to the Trial Court in which he raised five grounds for relief:[30] (1) insufficient evidence to prove the actual amount of cocaine seized; (2) petitioner was denied the right to be present at trial; (3) petitioner was denied the right to testify on his own behalf; (4) the State failed to timely disclose a scientific report; and (5) ineffective assistance of appellate counsel for failure to obtain the entire record of the trial proceedings, including voir dire, voir dire objections, and opening and closing arguments, which denied him complete appellate review.

---

[26]*State v. Joseph*, 922 So. 2d 1176, 2005-1700 (La. 2/3/06).

[27]St. Rec. Vol. 2 of 3, Motion for Production of Documents, 6/26/06 (dated 6/24/06).

[28]St. Rec. Vol. 2 of 3, Trial Court Order, 9/27/06.

[29]St. Rec. Vol. 2 of 3, Motion for Cost of Transcripts, 7/16/06; Letter to Joseph, 9/20/06.

[30]St. Rec. Vol. 2 of 3, Uniform Application for Post-Conviction Relief, 5/10/07 (dated 4/26/07).

The Trial Court denied relief on May 23, 2007, finding that the first four claims were procedurally barred from review pursuant to La. Code Crim. P. art. 930.4, because they should have been raised on direct appeal and were not.[31] As to the fifth claim, ineffective assistance of appellate counsel, the Trial Court found that Joseph was not entitled to relief, because none of the claims raised on appeal or in the application for post-conviction review required review of the voir dire or argument portions of the transcript. The Trial Court also noted that, as to all claims raised, Joseph failed to meet his burden of proof.

On July 19, 2007, the Louisiana Fifth Circuit denied Joseph's related and timely[32] writ application, finding that the application did not disclose any error in the trial court's ruling.[33]

On September 17, 2007, Joseph submitted a writ application to the Louisiana Supreme Court seeking review of his post-conviction claims.[34] The Court denied the application on June 20, 2008, without stated reasons.[35]

In the meantime, on June 13, 2008, Joseph filed a motion seeking to correct his sentence arguing that his sentence after his conviction for possession of cocaine in excess of 400 grams was improper, because the weight of the drugs, on which the sentence was based, was not properly

---

[31]St. Rec. Vol. 2 of 3, Trial Court Order, 5/23/07.

[32]The Trial Court granted Joseph until July 9, 2007, to file an application with the appellate court. St. Rec. Vol. 2 of 3, Notice of Intent, 6/6/07 (dated 6/4/07); Trial Court Order, 6/11/07.

[33]St. Rec. Vol. 2 of 3, 5th Cir. Order, 07-KH-464, 7/19/07.

[34]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 07-KH-1938, 10/3/07 (postal meter 9/18/07, dated 9/17/07).

[35]*State ex rel. Joseph v. State*, 983 So.2d 1268 (La. 2008); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2007-KH-1938, 6/20/08.

8

calculated.[36] The Trial Court denied the motion on June 24, 2008, finding that any argument regarding sufficiency of the evidence should have been raised on appeal as a challenge to the conviction and was not properly raised in a motion to correct.[37] After construing the petition as one seeking post-conviction relief from the conviction and sentence, the Court found that it was procedurally barred as untimely pursuant to La. Code Crim. P. art. 930.8(A).[38]

On July 23, 2008, Joseph filed a notice of his intent to seek supervisory review in the appellate court.[39] The Trial Court granted Joseph until September 26, 2008, to file his writ application with the Louisiana Fifth Circuit.[40]

On August 11, 2008, the Louisiana Fifth Circuit denied Joseph's writ application, which actually had been filed on July 22, 2008,[41] finding no error in the Trial Court's ruling, including its construction of the motion as an untimely application for post-conviction relief barred from review under La. Code Crim. P. art. 930.8.[42] Joseph did not seek further review of this ruling.

### III.     Standards of a Merits Review

AEDPA's deferential standard of review applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d). As outlined previously, Joseph's insufficiency of the evidence claim was dismissed as procedurally barred under La. Code Crim. P. art. 930.4, and it was

---

[36]St. Rec. Vol. 2 of 3, Motion to Correct Illegal Sentence, 6/13/08 (dated 6/6/08).

[37]St. Rec. Vol. 2 of 3, Trial Court Order, 6/24/08.

[38]*Id.*

[39]St. Rec. Vol. 2 of 3, Notice of Intent, 7/23/08.

[40]St. Rec. Vol. 2 of 3, Trial Court Order, 7/30/08.

[41]The filing date appears on the face of the Court's order denying the writ application on August 11, 2008.

[42]St. Rec. Vol. 2 of 3, 5th Cir. Order, 08-KH-606, 8/11/08.

not addressed on the merits. With respect to claims that are not adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply. *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003). Instead, the federal courts review those claims under the pre-AEDPA *de novo* standards of review. *Id.*, at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying *de novo* standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *see also*, *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

As outlined previously, Joseph first raised this issue to the Trial Court in his application for post-conviction relief. The Trial Court found that the claim did not involve new evidence and could have been but was not raised on appeal. The Court denied relief on procedural grounds pursuant to La. Code Crim. P. art. 930.4. This was the last reasoned decision of the state courts on this issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991). Because Joseph's claim was not addressed on the merits, the Court will consider the claims *de novo*.

## IV. Insufficient Evidence

In his sole remaining claim, Joseph alleges that the evidence was insufficient to support his conviction, because the State failed to prove the amount of cocaine in the package. He argues that the State did not prove that the cocaine weighed 400 grams or more without the packaging to establish a required element of the crime under La. Rev. Stat. Ann. § 40:967(F)(1)(c). He contends that his judgment should be one of mere possession of cocaine under La. Rev. Stat. Ann. § 40:967(C)(2).[43]

---

[43]*See* Rec. Doc. No. 1, p. 25. Under § 40:967(C)(2) provides as follows: "C. Possession. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in R.S. 40:978 while acting in the course of his professional practice, or except as otherwise authorized by this Part . . . (2) Any

10

Under *Jackson v. Virginia*, 443 U.S. 307 (1979), the Court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, No. 09-30164, 2011 WL 134951, at *3 (5th Cir. Jan. 14, 2011). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16); *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995).

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, __U.S. __, 130 S. Ct. 665, 672, 673 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, Fed. Appx. 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at trial.") (quoting *Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691,

---

person who violates this Subsection as to any other controlled dangerous substance shall be imprisoned with or without hard labor for not more than five years and, in addition, may be sentenced to pay a fine of not more than five thousand dollars."

695 (5th Cir. 2005). A reviewing habeas court is not authorized to substitute its interpretation of the evidence or the credibility of witnesses for that of the fact-finder. *Weeks*, 55 F.3d at 1062.

Joseph was charged with possession of cocaine in the amount of 400 grams or more in violation of La. Rev. Stat. Ann. § 40:967(F)(1)(c). To support a conviction under this provision, the State must present evidence establishing beyond a reasonable doubt that: (1) the defendant was in possession of the drug; (2) the defendant knowingly or intentionally possessed it; and (3) the amount possessed was 400 grams or more of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of La. R.S. 40:964.[44] *State v. Major*, 888 So.2d 798, 802 (La. 2004) (citing La. Rev. Stat. Ann. § 40:967(F)(1)(c)).

In this case, Joseph does not challenge the fact that the drug was cocaine or that he was knowingly and intentionally in possession of it. In fact he concedes that, but for the weight of the cocaine, he should be resentenced to possession of cocaine. Thus, his claim is that the State failed to prove the third factor, the weight of the cocaine, to satisfy the increased sentence exposure he received under § 40:967(F)(1)(c).[45] The Court's focus will therefore be on the sufficiency of the evidence to establish that the cocaine in Joseph's possession was 400 grams or more. The record reflects that it was.

At Joseph's trial, Daniel Waguespack testified for the State as an expert in forensic science.[46] He indicated that, upon receipt of the drugs seized in Joseph's case, he took a gross weight of the

---

[44]Cocaine is listed as a Schedule II substance under La. R.S. 40:964 A(4).

[45]*See* Rec. Doc. No. 1, p. 25; *see also*, Rec. Doc. No. 16, p. 6.

[46]St. Rec. Vol. 1 of 3, Trial Transcript, pp. 4, 8, 8/26/03.

three large bags before obtaining samples for testing from each.[47] He ultimately determined that the product was about 95% pure cocaine hydrochloride.[48] He further testified that the gross weight of the three packages was 3.38 kilograms or 3,380 grams including the packaging.[49] He did not pour the cocaine out and measure it separately.[50] However, based on his over 30 years of experience, he opined that each of the bags contained a net weight of very close to 1,000 grams of cocaine per package.[51] Waguespack indicated that most cocaine is shipped in 1,000 gram increments and is often in similar packaging.[52] This description of typical packaging and weight was also confirmed by Lieutenant Bruce Harrison, the State's expert on the use, packaging, distribution and value of narcotics.[53] The bags of cocaine were admitted into the evidence and published to the jury.[54]

The Louisiana courts, using the *Jackson* standard, allow for presentation of the estimated net weight by forensic experts based on their experience and opinion. *See*, *State v. Lewis*, 1 So.3d 535, *537-38 (La. App. 5th Cir. 2008) (net weight approximated by forensic expert based on gross weight less estimated weight of packaging and number of bags seized); *State v. Famous*, 667 So.2d 1209, 1212-13 (La. App. 2d Cir. 1996) (the jury was entitled to rely on police officers' estimated average of cocaine weight without packaging to conclude that defendant possessed the requisite amount of

---

[47]*Id.*, pp. 9-10.

[48]*Id.*, pp. 14, 16.

[49]*Id.*, p. 16.

[50]*Id.*, p. 17.

[51]*Id.*

[52]*Id.*, pp. 21-22.

[53]*Id.*, pp. 74, 80-82.

[54],*Id.*, p. 61 (State's Exhibit 2, the cocaine, was admitted), p. 87.

cocaine); and *accord*, *State v. Ballom*, 562 So.2d 1073 (La. App. 4th Cir. 1990) (applying *Jackson* standard to assumptions made by drug analysis expert as to purity and weight of cocaine).

This is no different than the federal standard where it is "well-established that an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business, as such testimony often is helpful in assisting the trier of fact understand the evidence." *United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir.1995) (citations omitted). This would include testimony regarding the purity, weight, and prices of drugs because such testimony concerns specialized knowledge about drug trafficking, which is an area with which most jurors are unfamiliar. *Accord United States v. Potts*, No. Crim. A. 00-060, 2000 WL 943219, at *4 (E.D. La. Jul. 7, 2000) (Vance, J.) (citations omitted).

In a case factually similar to that of Joseph, the Louisiana Fifth Circuit Court of Appeal found sufficient evidence on direct appeal where the same expert, Daniel Waguespack, testified in a similar manner. *State v. Riley*, 731 So.2d 409 (La. App. 5th Cir. 1999). In that case, Waguespack testified as to the gross weight of the cocaine in its packaging and made a visual estimate of the net weight based on his years of experience. *Id.*, at 413. In addition, the cocaine was published to the jury which allowed the jurors to see and handle the bags for themselves. The Court found this sufficient under Louisiana law to allow a rational trier of fact to conclude the weight of the cocaine seized, minus the packaging, met the statutory requirement. *Id*.

In this case, Waguespack and Harrison presented evidence that the typical weight of packages like those presented to the jury were 1,000 grams. Waguespack testified that he weighed the packages and determined that they had a combined gross weight of 3,380 grams including the cocaine and the packaging. Based on Waguespack's expert opinion, without the plastic bag and duct

tape, the individual contents of each bag weighed very close to 1,000 grams of cocaine hydrochloride. The evidence, therefore, presented 3,000 grams of almost 100% pure cocaine hydrochloride as a net total for the jury to consider. This amount was well over the 400 grams or more that the State had to prove in Jackson's case.

The credibility of and weight to be given to Waguespack's testimony was a determination for the jury. This Court's consideration is to the evidence itself. Taken in a light most favorable to the prosecution under *Jackson*, the cocaine packages and testimony submitted to the jury were sufficient for a reasonable fact finder to conclude that the cocaine seized at Joseph's arrest was of a net weight well over 400 grams. For these reasons, Joseph has failed to establish his entitlement to relief on this issue.

## V.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Byron Joseph's request to abandon his claims that he was denied the right to be present at trial, that he was denied the right to testify on his own behalf, that the State failed to timely disclose a scientific report in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), that his appellate counsel gave ineffective assistance, that the Trial Court erred in denying the motion to suppress the evidence, and that the Trial Court erred in finding consent to the search, be **GRANTED** and these claims be **DISMISSED WITH PREJUDICE**.

It is further **RECOMMENDED** that, having found that the insufficiency of the evidence claim is without merit, Joseph's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[55]

New Orleans, Louisiana, this 24th day of May, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[55] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.